# Richmond

WRENDO M. GODWIN, RECEIVER, ET ALS. V. D. FRANK WHITE, MAKER, AND OTHERS.

April 8, 1940.

Record No. 2099.

Present, Campbell, C. J., and Holt, Hudgins, Gregory, Eggleston and Spratley, JJ.

The opinion states the case.

*George L. Doughty, Jr.,* for the appellant.

*Gunter & Gunter* and *Stewart K. Powell,* for the appellees.

HOLT, J., delivered the opinion of the court.

In 1924, D. Frank White borrowed from the Peoples Bank of Bloxom $2,000 and gave his mother, Dora S. White, as an endorser. This note, without curtail, was carried until 1928, when he applied for another and temporary loan of $1,200. This application was passed upon by the bank's board. "Upon the application of Mr. D. Frank White for a loan of $1,200 after a discussion by the members of the board present, Mr. Barnes made a motion that Mr. D. Frank White be granted a temporary loan of $1,200, upon security to be approved by Mr. G. Walter Mapp. This motion being duly seconded, was unanimously carried."

With real estate security tendered, it was approved in August, 1928. Mr. White and his wife, Janie T. White, executed their bond to this bank for $3,200 and not for $1,200. The contention of the Whites is that it not only secured the $1,200 in new money borrowed but superseded and took the place of the $2,000 note then outstanding. The only record which tends to sustain this claim is an entry on the "liability ledger" in which this $2,000 note is marked "paid" as of August 23, 1928. These transactions took place while Mr. Thompson was cashier, but he is dead, and Mr. Norman Godwin, who was cashier at the time the bank closed up, said that it was the bank's custom to mark the old notes paid when they were superseded by renewals.

White said that after the $3,200 note was executed he asked the bank to give him back his note for $2,000 but was told that this could not be then done because his bank had borrowed from another bank and had used it as collateral, something which might have happened to any one. But plainly that did not call for any renewal, and yet he and his mother did renew their note in October, 1929.

Mr. W. R. Gardner, who was chief bank examiner, examined the affairs of this bank and said that the $3,200 White bond was secured by a deed of trust and by the $2,000 bond, endorsed by Mr. White's mother and held as additional or collateral security to the principal debt. This is the $2,000 bond which afterwards went to judgment, and it is this judgment which the receiver now seeks to enforce.

If the note of October, 1929, was a renewal of the note which had gone before, that is the end of this case. The result would be the same if it were an independent transaction, as appears from this excerpt from Mr. White's evidence:

"Q. Were you ever asked for a renewal of this $2,000 note after you gave the 1928 deed of trust?

"A. Yes, sir.

"Q. Did you give it,

"A. Yes, sir.

"Q. Where is that note?

"A. That is the one the judgment was gotten on by Mr. Doughty. There is an explanation due in connection with that. The Peoples Bank were in financial trouble all the time, and Mr. Thompson asked me to let them continue to use that as credit.

"Q. And you did?

"A. Yes, sir.

"Q. And you renewed this note after you gave the $3,200 deed of trust?

"A. Yes, sir.

"Q. And your mother endorsed it?

"A. Yes, sir.

"Q. And you left it there as an asset of the bank?

"A. No, sir, not as an asset. I just loaned it to them to accommodate them.

"Q. You knew when you were director that that note was being listed as an asset of the bank, didn't you?

"A. No, I did not.

"Q. Then what did you think they were doing with it?

"A. They were using it as collateral.

"Q. Then if they were doing that they were using it as an asset?

"A. I guess they were.

"Q. Do you know with whom they were using it as collateral?

"A. Banks off the Shore.

"Q. Then you did get back the original $2,000 bond?

"A. Yes, sir.

"Q. You say in your answer you applied to Mr. Thompson over and over again but you never got it back.

"A. Well I never got the renewal back."

Mr. White was a director in this bank until 1933 or 1934 and was, of course, cognizant of its condition. The note of 1929 could have been given for but one purpose, assuming it to have been an independent transaction, and that was to bolster its failing fortunes, the necessity for which no one knew better than he did. It is an unqualified promise to pay and must be paid, though we accept as true every statement of fact made by him. One lends his credit at his peril. *White* v. *Commonwealth,* 158 Va. 749, 164 S. E. 375. As a matter of fact, we are of opinion that it was a renewal and should be treated as such. Mr. White himself so speaks of it.

*Reversed and remanded.*